**Sonia M. FLORES CRUZ, Plaintiff,**

v.

**AVON PRODUCTS, INC., Defendant.**

**Civ. No. 86–1672 (JP).**

United States District Court,
D. Puerto Rico.

June 28, 1988.

José L. Rivero, Moreda & Moreda, San Juan, P.R., for plaintiff.

Francisco M. Troncoso, Troncoso & Fuentes Agostini, San Juan, P.R., for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

This suit was brought under the Age Discrimination in Employment Act, 29 U.S.C. § 626 *et seq.* (ADEA). Plaintiff, Sonia Flores Cruz was, at the time of her dismissal from defendant, Avon Products, Inc., a forty-seven-year-old Zone Product Manager. The case proceeded to trial and the jury found that defendant had violated the ADEA in that it discriminated against plaintiff because of her age. In the answer to a special interrogatory on the verdict form, the jury found that defendant's actions in dismissing plaintiff, which had already found to be discriminatory, were willful.

Defendant has moved for judgment non obstante veredicto or, in the alternative, a new trial, on several grounds. Avon argues that the Court's striking of certain witnesses "forced [Avon] to totally alter its strategy, witnesses and everything," as well as denying it due process of law. Avon also argues that the jury instructions and special verdict form in this case were inadequate or confusing. Finally, Avon makes the claim that the evidence was insufficient to sustain the verdict and that the damages imposed were excessive and require a new trial.

### I. *Background*

By Order of this Court, the Clerk issued an Initial Scheduling Conference Call

> for the purpose of informing the Court of [the parties'] respective contentions and disclosing all facts pertinent to the case, including bringing in evidence to show such facts and assessing any damages claimed. This conference will also serve the purposes of guiding and setting discovery schedule and scheduling this case for Status Conference, Pretrial, and Trial.

During the Initial Scheduling Conference (ISC)[1] the following schedule was established for this case:

(1) Interrogatories were to have been answered by April 9;

(2) Motions for joinder of parties or for amendment of the pleadings were to have been filed by April 15;

(3) Motions to dismiss or for summary judgment were to have been filed by May 1;

(4) Depositions were to have been completed by May 29;

(5) Pretrial was scheduled for June 4; and

(6) Trial was scheduled for June 24.

Defendant responded to plaintiff's interrogatories, which were first propounded on January 20, on April 19. Question 7 of that set of interrogatories requested the identities of persons that were to be used as defense witnesses. The response was: "This has not been determined at this time. This information will be provided at the pretrial conference." Despite the ISC Order to answer the interrogatories, defendant disregarded the Order of this Court by giving an incomplete and evasive answer. Neither did defendant ask the Court for an

---

1. *See generally,* Pieras, *Judicial Economy and Efficiency Through the Initial Scheduling Conference: The Method,* 35 Cath.U.L.Rev. 943 (1986) (hereinafter Pieras, *The Method*).

extension of time to answer the interrogatories, nor move for a protective order. Further, the averment that answers to this interrogatory would be provided at the pretrial conference did not satisfy Fed.R.Civ.P. 26(e)(2)(B). In answers to questions 5 and 6 of plaintiff's January 20 interrogatories, defendant did provide the identities of some potential witnesses. At the pretrial conference, Avon presented a list of at least twenty-seven additional witnesses.[2] In addition, Avon purportedly "reserved the right" to name an expert witness. The rationale Avon gave for its "reservation of right" was that because plaintiff's expert witness had not been named until relatively late in the proceedings, Avon should be accorded a similar opportunity.

On June 23, the eve of trial, Avon was finally provided with the report of plaintiff's expert witness, an economist who would testify as to plaintiff's prospective loss of earnings resulting from her discharge by Avon. The report was characterized as unfinished by the economist at his deposition on June 23. Avon filed an "emergency" motion to exclude plaintiff's expert. Plaintiff countermoved for an exclusionary order against all of Avon's twenty-odd witnesses. The bases for the crossmotions were substantially the same: the other party, by not complying with the discovery schedule set by the Court, had placed the movant at a distinct disadvantage in preparation and trial of this action. Both parties were moving for an exclusion order under Fed.R.Civ.P. 37(b)(2)(B). The Court was faced with three options: (1) deny the crossmotions for lack of a previous motion and order to compel discovery; (2) grant the motion for exclusion as to one but not both parties; or (3) grant the crossmotions. The first alternative would saddle the Court with a trial presented by attorneys unprepared to crossexamine witnesses. This would be a wasteful use of this Court's limited time and resources, as well as a complete derogation of the spirit of the Federal Rules of Civil Procedure.

*See* Fed.R.Civ.P. 1. The second alternative would not be an equitable solution because the parties were in pari delicto. Plaintiff's expert had not finished his report on the eve of trial and Avon had attempted to conceal the identities of its two dozen or so witnesses until it was too late to depose them all.

The Court granted the crossmotions. Not all of Avon's witnesses, however, were excluded. The Court limited Avon's witnesses to those who had been named in answers to questions five and six of plaintiff's January 20 interrogatories. Plaintiff's expert witness was excluded.

Attempts to unfairly manipulate the trial continued even after the battle was joined. Avon's second witness called was Natividad Ríos. Ríos, a sales manager of defendant Avon, was present in the courtroom throughout plaintiff's testimony, even though all witnesses had been placed "under the rules."[3] A comptroller of Avon, whose presence had previously been made known to opposing counsel, was also at the defense table and was Avon's first witness. It was not, however, until Ríos had been called to the stand and objected to by plaintiff that defense counsel invoked the exception in Fed.R.Evid. 615 that Ríos was "an officer or employee of [Avon] … designated as its representative by its attorney," who therefore had a right to be present during plaintiff's or any other witnesses' testimony. A cautionary instruction was given to the jury, the least the Court could have done in this instance.

## II. *Judgment Non Obstante Veredicto*

At the close of all evidence of this case, both sides moved for a directed verdict, thus preserving their right to move for judgment non obstante veredicto. Fed. R.Civ.P. 50. The Court denied the crossmotions. As previously noted, the jury found for the plaintiff. Defendant has renewed this motion as a motion for judg-

---

**2.** One of the listed witnesses was "Real Estate school principals." No further identification or indication of the subject matter of the testimony was provided.

**3.** "At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." Fed.R.Evid. 615.

ment non obstante veredicto (J.N.O.V.). Avon argues that the evidence presented by plaintiff was insufficient to carry plaintiff's burden and that reasonable persons could have come to but one conclusion, the defendant's, in viewing the evidence presented. *Wagenmann v. Adams,* 829 F.2d 196, 200 (1st Cir.1987); *Miranda v. Muñoz,* 770 F.2d 255, 257 (1st Cir.1985); *Fishman v. Clancey,* 763 F.2d 485, 486 (1st Cir.1985); *Cazzola v. Codman & Shurtleff, Inc.,* 751 F.2d 53, 54 (1st Cir.1984) (review of denial of J.N.O.V. in ADEA case). In a case arising under ADEA, such as here "the inquiry 'is whether the plaintiff has produced evidence from which a trier of fact might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.' " *Cazzola,* 751 F.2d at 54, *quoting Elliott v. Group Medical & Surgical Service,* 714 F.2d 556, 562 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984).

The testimony of plaintiff presented at trial chronicled her very successful career with Avon and her bewildering fall from grace. According to testimony offered by defense witnesses, this fall coincided with Avon's gradual lowering of the average age of their promoters. This was coupled with Flores' testimony that her supervisor, Natividad Ríos, told Flores that "new blood and young blood [was] needed by the company." Shortly before plaintiff was dismissed, she was asked to produce a copy of her birth certificate. The parties stipulated to the fact that plaintiff was replaced by a woman seventeen years younger than plaintiff.[4] The plaintiff having presented a prima facie case that she was discriminated against because of her age, the burden—a burden of production, not persuasion—shifted to defendant to articulate a nondiscriminatory reason for plaintiff's dismissal. *Loeb,* 600 F.2d at 1011–12.

Defendant did present evidence designed to articulate a non-discriminatory reason for plaintiff's discharge. Certain witnesses testified that plaintiff's sales were not growing at a sufficient rate. Others testified that plaintiff's handling of funds entrusted to her care, while not fraudulent, was at least untrustworthy. The defendant therefore articulated a nondiscriminatory reason for plaintiff's dismissal. Plaintiff, at that point, took up again her burden of persuasion to demonstrate that the articulated reason was merely pretextual. *Menard v. First Security Services Corp.,* 848 F.2d 281, 287 (1st Cir.1988); *Dea v. Look,* 810 F.2d 12, 14 (1st Cir.1987); *Loeb,* 600 F.2d at 1012 n. 6; *Aguayo v. R.J. Reynolds Tobacco Co.,* 670 F.Supp. 1094, 1097 (D.P. R.1987) (per Pieras, J.). On crossexamination, however, plaintiff's counsel elicited that the evaluation purportedly used as the basis for plaintiff's dismissal was prepared after the date of discharge. Plaintiff also presented evidence that other indicia of her performance, such as incentives and awards granted by defendant, continued unabated right up to the time of her dismissal. In view of this, a reasonable trier of fact could rationally, in fact easily, con-

---

**4.** The law concerning this element of the prima facie case of age discrimination has changed in this circuit over the past decade. In *Loeb v. Textron,* 600 F.2d 1003 (1st Cir.1979) (per Campbell, J.), the appeals court stated "the [district] court was ... incorrect in instructing that, as part of his prima facie case, Loeb had to prove that 'he was replaced by a younger person or persons outside the protected age group.' " In *Dea v. Look,* 810 F.2d 12 (1st Cir.1987) (per Campbell, C.J.), however, the First Circuit cited this element with approval. *Dea,* 810 F.2d at 14 n. 1, *citing Loeb,* 600 F.2d at 1008. This is an apparent refinement of *Loeb*'s holding that "A correct statement of the elements of a ... prima facie case [for age discrimination] therefore would have been that Loeb had to prove that he was in the protected age group, that he was

performing his job at a level that met his employer's legitimate expectations, and that [defendant] sought someone to perform the same work after [Loeb] left." *Loeb,* 600 F.2d at 1014.

The state of the law is still not crystalline. *See Menzel v. Western Auto Supply,* 848 F.2d 327, 328 (1st Cir.1988) (per Torruella, J.) (citing the *Loeb*-approved prima facie case); *but see Menard v. First Security Services Corp.,* 848 F.2d 281, 284–85 (1st Cir.1988), (per Campbell, C.J.) (citing the *Dea*-approved prima facie case). In any event, the parties stipulated to this element, and even under *Loeb,* although the substitution of plaintiff by a younger person is not necessarily part of the prima facie case of age discrimination, it certainly is material and highly probative of defendant's intentions. *Loeb v. Textron,* 600 F.2d 1003, 1013 n. 9 (1st Cir.1979).

clude that defendant's proffered reasons were pretextual. The motion for J.N.O.V. on the question of defendant's violation of the ADEA is DENIED. That, however, does not close defendant's motion for J.N.O.V. Defendant also challenged the jury's verdict on their finding that defendant committed a willful violation of the ADEA, thus exposing defendant to double damages. The defendant argues that the evidence was legally insufficient to find a willful violation of the ADEA on defendant's part. At trial, the jury was instructed that an act is done "willfully" if done voluntarily and intentionally, with the specific intent to do something that the law forbids, and not done by accident or mistake.

This formulation of "willfulness" follows that approved by the United States Court of Appeals for the First Circuit in *Loeb*, 600 F.2d at 1020 n. 27. The United States Supreme Court has noted its disagreement with this formulation but has not explicitly disapproved it. In *Trans World Airlines, Inc. v. Thurston*, the Court stated "We do not agree with [petitioner's] argument that unless it intended to violate the Act, double damages are inappropriated under ... the ADEA. Only one Court of Appeals has expressed approval of this position." 469 U.S. 111, 126 n. 19, 105 S.Ct. 613, 624 n. 19, 83 L.Ed.2d 523 (1985), *citing Loeb v. Textron*, 600 F.2d 1003, 1020 n. 27 (1st Cir. 1979). Under operative willfulness formulation in this circuit, plaintiff must meet a higher standard in order to recover liquidated damages than the Supreme Court has explicitly approved. This cuts in defendant's favor.

Nevertheless, there was sufficient credible evidence upon which a reasonable trier of fact could base a finding of willfulness in defendant's violation of the ADEA. First, there was plaintiff's own testimony as to Rios' statements that "new blood" was needed. Avon, in their own defense, presented documentary evidence as to the make up of its work force. That evidence demonstrated that Avon pursued policies resulting in the maintenance of an almost exclusively youthful workforce. The precise formulation of willfulness that the Supreme Court has found reasonable, i.e., reckless disregard of the applicability of the ADEA, is fully met by the evidence presented to the jury. *Thurston*, 469 U.S. at 126, 105 S.Ct. at 624. Moreover, plaintiff's evidence satisfied the exacting standards this Court required in its jury instructions. The motion for J.N.O.V. as to the willfulness finding is DENIED.

### III. *New Trial*

Defendant has alternatively moved for a new trial. The motion has several grounds upon which Avon wishes to have the Court retry this case. The first is that the exclusion of Avon's witnesses constituted a denial of due process. The second is that the Court abused its discretion in modifying the pretrial order in this case. The third is that the award of damages by the jury was excessive. Fourth, Avon alleges that the verdict was not supported by sufficient evidence.[5] Finally, Avon characterizes jury instructions and special verdict form as misleading and/or confusing.

### A. Due Process Claim

Avon's "due process argument" consists only of the assertion that striking Avon's witnesses "violated the due process rights of defendant." Avon cites no authority for the proposition. The United States Supreme Court has consistently held "that there are constitutional limitations upon the power of the courts, even in the aid of their own valid processes." *Societe Internationale v. Rogers*, 357 U.S. 197, 209, 78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255 (1958). To that end, sanctions under Rule 37 of the Federal Rules of Civil Procedure, such as are at issue here, "must be read in light of the provisions of the Fifth Amendment that no person shall be deprived of property without due process of law." *Id.* Due process considerations, however, are not necessarily measured merely by the

---

**5.** The Court hereby DENIES the motion for a new trial because of alleged insufficiency of the evidence for the reasons outlined in section II of this Opinion and Order. The jury's verdict is fully supported and plaintiff properly carried its burden in all respects.

severity of the sanction. *See Damiani v. Rhode Island Hospital,* 704 F.2d 12, 15–16 (1st Cir.1983), *affirming* 93 F.R.D. 848 (D.R.I.1982). The reason for the sanction, the offending conduct cured, punished, or deterred, as well as the impact of the future course of the litigation must all be weighed. At the same time the Court must protect the due process rights of all parties that appear before it and cannot allow misuse of its processes. In *Damiani,* the district court dismissed an antitrust suit after noncompliance with discovery orders. In affirming the district court, the United States Court of Appeals for the First Circuit noted that the *Societé Internationale* ruling rested on the premise that the dismissed *Societé Internationale* plaintiff was neither unable to comply or prevented from complying with the discovery order that precipitated the dismissal. *Damiani,* 704 F.2d at 16, *citing Societé Internationale,* 357 U.S. at 211, 78 S.Ct. at 1095. In addition to disobedience of the district court's orders, the offending party in *Damiani* "arrogated control of discovery to [counsel] and changed the date of compliance to suit his own convenience and that of his client." *Damiani,* 704 F.2d at 16. *See HMG Property Investors, Inc. v. Parque Industrial Río Cañas, Inc.,* 847 F.2d 908, 918 n. 14 (1st Cir.1988), (sanctions in "an effort to rebalance scales which [a party], by its footdragging, had tilted" not violative of due process in view of party's violation of court's orders); *Commonwealth of Puerto Rico v. SS Zoe Colocotroni,* 628 F.2d 652, 666 (1st Cir.1980) (no procedural due process violation in striking of certain pleadings where sanction was imposed to prevent party from seizing unfair advantage through irresponsible conduct of litigation), *cert. denied* 450 U.S. 912, 101 S.Ct. 1350, 67 L.Ed.2d 336 (1981); *see also United States v. Sumitomo Marine & Fire Ins. Co.,* 617 F.2d 1365, 1369–70 (9th Cir.1980); *Cine Forty–Second St.*

*Theatre Corp. v. Allied Artists,* 602 F.2d 1062 (2d Cir.1979).

The sanctions in this case were wholly proper. First, the exclusion order did not amount to a default being entered. Avon was able to present a defense, but only through those witnesses that plaintiff had been fairly apprised to expect. Defendant put on four witnesses. Some of Avon's witnesses testified as to company figures indicating that some employees were as old as or older than plaintiff. Others offered nondiscriminatory reasons for plaintiff's dismissal. All of these witnesses were subject to crossexamination and the jury had a full opportunity to assess the witnesses and their testimony. Additionally, Avon's failure to name over two dozen witnesses until it was too late for plaintiff to depose them all was hardly due to its inability. It was deliberate tactical intransigence. Under Fed.R.Civ.P. 26(e)(2)(B), defendant had a duty to seasonably supplement the response to question 7 of plaintiff's January 20 interrogatories.[6] Defendant knew that the initial response was no longer correct, *i.e.,* defendant knew who its witnesses would be. Failing to disclose them was a "knowing concealment." Failing to disclose while under this Court's order to answer was inexcusable. *Damiani,* 704 F.2d at 16; *cf. Marquis Theatre Corp. v. Condado Mini Cinema,* 846 F.2d 86, 89 (1st Cir.1988), ("We cannot agree that a pigheaded refusal to cooperate is a legitimate trial tactic.").

One of the important purposes of the ISC is precisely to schedule the events, including discovery, so that the Court may monitor the case. By so doing, the Court aims to smooth the bumpy road leading to the date of trial and to avoid undue advantage by any party and last-minute motions pertaining to matters which should had been settled long before trial. The element of surprise is thereby eliminated and the par-

---

**6.** A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement the response to include information thereafter acquired, except as follows: ... A party is under a duty seasonably to amend a prior response if the party obtains information upon the basis of which ... the party knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment. Fed.R. Civ.P. 26(e)(2)(B).

ties are apprised of the case of their opponent and the evidence, including witnesses, that the other party possesses to sustain its theory. Once this is known, the opposite party is placed in a position to use the rules of discovery to better know its opponent's case and prepare himself for trial and, in general, learn all the facts. In discovery, one party may decide to take the deposition of witnesses which have been announced by the other party in due course depending upon its professional assessment of the strengths and weaknesses of the opponent's case. The Court's interest in these matters is to ensure that the Court is fairly presented with all material and probative evidence. This includes not only the Court's interest in seeing that a proponent of evidence is able to present it but also that the opponent be given fair opportunity to explore and present to the Court the limitations of the evidence, e.g., through crossexamination. Then, and only then can the Court fairly evaluate the evidence and reach an informed decision as to how the law should be applied to the facts properly before the Court. This Court, through the ISC, provides a blueprint for the litigation with a keen emphasis on discovery scheduling. This blueprint, and the orders of the Court through which the blueprint is implemented, are of paramount importance to judicial decisionmaking.

In this case the defendant's violation of the order of the Court that defendant had to answer the interrogatories by April 9 created precisely the circumstances that the ISC was aimed to avoid. At the pretrial, close to the trial date, a number of witnesses were advanced when it was impossible for plaintiff to take their depositions or otherwise reasonably prepare her case in view of the quantum leap in the mass of defendant's evidence. That the Court was in a position to take prompt and effective curative action is a dramatic ex-

ample of the benefits of an ISC and the injustices and delays that the ISC avoids.

The nature of the sanction ensured that defendant was not able to profit by its belated unmasking of its witnesses—the identities of whom had been requested early on. *Dellums v. Powell*, 566 F.2d 231 (D.C.Cir.1977). The exclusion of the witnesses was precisely aimed at the prejudice inflicted upon plaintiff and cured it. In the same manner, and although the matter is obviously not the subject of a motion for a new trial, the exclusion of plaintiff's expert witness served the same ends.

■ Procedural due process was observed through the mechanism by which the exclusion came about. The parties, dissatisfied with their opponent's late maneuvering around witnesses, filed crossmotions to exclude. The motions were served on opposing counsel. Defendant even formally opposed plaintiff's motions to strike witnesses. As such, Avon had notice of the possibility of sanction and was heard, via motion.[7] The arguments presented by Avon in support of its opposition to plaintiff's motion to strike simply did not convince the Court. Procedural due process does not guarantee victory in every argument.

## B. Modification of Pretrial Order

■ When the Court excluded witnesses on both sides, it was a modification of the pretrial order in this case. The pretrial order, as well as the ISC order, were entered pursuant to Fed.R.Civ.P. 16.[8] Avon now argues that modification of the final pretrial order was not necessary to prevent manifest injustice. Defendant misapprehends the meaning of manifest injustice. Given the Court's familiarity with this case, we are not inclined to reconsider the exclusion order. Both sides' attorneys are of no small repute for their expertise and skill in federal litigation. Having practiced for

7. Additionally, the parties met with the Court in chambers immediately before the case was called in Court. Although not on the record, the crossmotions were a topic of discussion at that informal conference.

8. *"Pretrial Orders.* After any conference held pursuant to this rule, an order shall be entered reciting the action taken. This order shall control the subsequent course of the action unless modified by a subsequent order. The order following a final pretrial conference shall be modified only to prevent manifest injustice".

years before this Court, they were well aware of the possible consequences of their tactics. The Court functions to find the truth of any matter presented to it and shall never allow the battle plan of either side to impede that function. "Every case involves the rights ... of three parties: the plaintiff, the defendant, and the court." *Higuera v. Pueblo International*, 585 F.2d 555, 556 (1st Cir.1978) (per Aldrich, J.). Had the pretrial order not been modified, plaintiff would have been faced with over two dozen witnesses announced too late to depose them all. The Court would have been saddled with unprepared counsel. Judging from the witnesses Avon did present, further testimony by defendant would have been merely cumulative. All of this would have occurred because defendant *chose* not to reveal the names of witnesses. "The day has long since passed when we can indulge lawyers the luxury of conducting lawsuits in a manner and at a pace that best suits their convenience." *Damiani*, 704 F.2d at 16. "There comes a point when the question arises who is running the court—counsel, or the judge. To this there can be but one answer." *Higuera*, 585 F.2d at 557. This judge has previously expressed itself in this regard.

> In reality, there are three participants in every case: the plaintiff, the defendant, and the court. All of them have their particular interest. The plaintiff's and the defendant's interests are of an economic nature; the court's interest is in the administration of justice in accordance with the law and in the speedy resolution of disputes.... I find that the power of the judge, in his impartial role in the [plaintiff-defendant-court] triad, can provide much needed guidance with a lot of teeth.

Pieras, *The Method*, 35 Cath.U.L.Rev. at 943, 945. We find no reason to reverse the exclusion of defendant's (and plaintiff's) witnesses on the basis of abuse of discretion. To allow the case to proceed as defendant would have it would have been manifest injustice to plaintiff and to this Court.

### C. Damages

Defendant contends that the jury's damages award of $25,000.00, and its subsequent upscaling to $50,000.00 pursuant to 29 U.S.C. §§ 626(b) and 216, is excessive and necessitates a new trial. A jury's award must stand unless it is a "grossly excessive" or "shocking to the conscience." *Joia v. Jo–Ja Service Corp.*, 817 F.2d 908, 918 (1st Cir.1987) (citations omitted) *cert. denied*, —— U.S. ——, 108 S.Ct. 703, 98 L.Ed.2d 654 (1988). The evidence of the case, in considering a new trial because of allegedly excessive damages, must be viewed "in the light most favorable to the proponent of the verdict." *Wagenmann v. Adams*, 829 F.2d 196, 215 (1st Cir.1987); *Joia*, 817 F.2d at 918; *Betancourt v. J.C. Penney Co.*, 554 F.2d 1206, 1207 (1st Cir. 1977).

When this case came to trial, the plaintiff had been out of work for well over one year. During her last full year with defendant, she earned over $18,000.00 plus commissions. Plaintiff also testified concerning the loss of certain fringe benefits. "Once the existence of damages is shown with reasonable certainty, 'the precise amount is necessarily left to the discretion of the finder of fact, to be exercised reasonably and within the range of the proofs of the case.'" *Hill v. Spiegel*, 708 F.2d 233, 238 (6th Cir.1983) (citation omitted). In view of all this, an award of $25,000.00 is within the realm of the reasonable. This is not the sort of case where the intervention of the Court in the jury's considered measurement of plaintiff's injuries is needed. *E.g.*, *Marchant v. Dayton Tire & Rubber Co.*, 836 F.2d 695 (1st Cir.1988) ($600,-000.00 jury verdict in personal injury action pared to $300,000.00 maximum possible award and case remanded where plaintiff was not permanently disabled, had completed medical therapy, and could still work in original field of employ, pain and suffering notwithstanding).

Defendant then contends that the upscaling of the damages award to $50,-000.00 pursuant to 29 U.S.C. § 626, based upon the jury's finding of a "willful" violation of the ADEA, made the award exces-

sive. It was not, however, the jury's province to consider whether plaintiff was entitled to the doubling liquidated damages provision of § 626. "Once, however, the jury found a willful violation and the finding was supported by sufficient evidence, the award of liquidated damages was the *duty* of the *trial court."* *Hill,* 708 F.2d at 238 (emphasis supplied). The jury specifically was *not* instructed as to the effect of the willfulness finding. It was the Court, pursuant to statutory mandate, and not the jury, that awarded the doubled damages. The Congress meant a punitive cast to this damages mechanism, and despite the increase in the award, the total still does not shock the conscience of the Court. Insofar as damages for pain and suffering are unavailable under ADEA, *Perrell v. FinanceAmerica Corp.,* 726 F.2d 654, 657 (10th Cir.1984) (and cases cited therein), Congress has made its determination of how discriminatees shall be made whole. The liquidated damages provision of ADEA reasonably provides that mechanism. Following the mandates of that statutory mechanism has not produced an unreasonable or outlandish result.

Defendant's contention that its proposed special verdict form, which contained a question in effect asking the jury whether liquidated damages should lie, is meritless. Congress already set that amount and placed it in the province of the Court to make the award, if and when the jury reached the appropriate factual conclusions.

**D. Jury Instructions and Verdict Form**

█ Avon argues next that the jury instructions given were inadequate. This is a departure from defendant's previous position on the record where counsel agreed to the jury instructions and failed to make any contemporaneous objections.

After some deliberations (and dinner), the Court received a note from the jury asking for further instructions on the statute involved and a dictionary. After consultation with both sides, and with their consent, the Court reread instructions pertaining to the ADEA, damages, and willful-ness. A verdict was then rendered with one-half of an hour. Defendant contends that all this demonstrates "that the jury was confused, did not know what to do, had no idea what to do with the willful violation instruction and this also gives grounds for the new trial. [sic]"

One of the problems of joining the legal profession is that attorneys never really see what goes on behind that closed jury room door. After a four-day trial, to send a jury out, provide them dinner, and have them come back with a verdict in just over two hours is justice rendered swiftly. Defendant's argument is without merit.

█ In the same regard, although Avon did submit a proposed special verdict form, the Court find it inappropriate and declined to adopt it. Defendant's special verdict form would have the jury consider first whether the violation of the ADEA, if any, were willful, and then consider whether liquidated damages should result. As previously noted, it is the Court's, and not the jury's, duty to award liquidated damages. The jury's proper role, in this regard, is only as fact finder.

The motion for new trial is DENIED IN ALL RESPECTS.

**IV. *Reinstatement***

█ Further pending before the Court is plaintiff's petition of reinstatement to her former position as Zone Product Manager with Avon Products, Inc. In the alternative, she seeks front pay damages. On June 29, 1987, a jury returned a verdict for plaintiff, finding that defendant willfully violated the ADEA in firing plaintiff. The jury awarded $25,000.00 in damages, the Court doubled the award pursuant to 29 U.S.C. § 626(b), and the Court entered judgment for $50,000.00.

Whether Ms. Flores Cruz should be reinstated to her former position rests with the discretion of the Court. The Court is authorized under section 626(b) of Title 29, to order reinstatement for a violation of the ADEA.

In any action brought to enforce this chapter the court shall have jurisdiction

to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement . . . .

See also *Wildman v. Lerner Stores Corp.*, 771 F.2d 605, 616 (1st Cir.1985).

The remedy of reinstatement is not appropriate where there exists animosity between the employer and the discharged employee. *Dickerson v. Deluxe Check Printers*, 703 F.2d 276 (8th Cir.1983). Plaintiff's petition informs that there does exist animosity between Ms. Flores Cruz and Mrs. Natividad Ríos, her former supervisor. The plaintiff's management position allows her decision-making discretion and require trust, loyalty, and an amicable business relationship between her and her supervisors. The trial revealed there is little trust and confidence remaining between plaintiff and Mrs. Ríos. Furthermore, plaintiff's petition also informs that Ms. Flores Cruz is happy with her new position.

A further consideration suggesting the Court should deny reinstatement is the availability of liquidated damages. The jury awarded plaintiff $25,000.00 in damages, and because it found a willful violation, the Court doubled the damages pursuant to the liquidated damages provision of § 626(b). The purpose of the remedies available is to make the plaintiff whole. The double damages awarded plaintiff adequately serves that purpose.

The plaintiff alternatively seeks front pay in lieu of reinstatement. To award front pay is also within the sound discretion of the Court. *Wildman*, 771 F.2d at 616. "Because future damages are often speculative, the district court, in exercising its discretion, should consider the circumstances of the case, including the availability of liquidated damages." *Id.* It appears that plaintiff is employed and her employment is steady and permanent. It also appears from her testimony at trial that her salary has been raised periodically to a satisfactory level comparable, in the long run, to her previous employment with Avon. To award her front pay is an exercise in speculation. Therefore, we conclude that the liquidated damages awarded adequately compensates Ms. Flores Cruz for the discrimination suffered.

Accordingly, the request for reinstatement and front pay damages are both DENIED.

IT IS SO ORDERED.