**Francisco WATLINGTON, Plaintiff,**

v.

**UNIVERSITY OF PUERTO RICO, Defendant.**

**Civ. No. 89–0022 (JP).**

United States District Court, D. Puerto Rico.

Nov. 5, 1990.

José L. Rivero, Moreda & Moreda, San Juan, P.R., for plaintiff.

Rubén T. Nigaglioni, Ledesma, Palou & Miranda, Hato Rey, P.R., for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it various post-trial motions including defendant's Rule 50 Motion for Judgment Notwithstanding the Verdict (judgment n.o.v.). This is an age discrimination case filed by Francisco Watlington pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*

("ADEA"). Mr. Watlington alleged that the University of Puerto Rico ("UPR") failed to renew his full-time teaching contract and also rejected his job application for a position in the Geography Department because of his age. The case proceeded to trial, and on April 4, 1990, the Jury returned a $75,000 verdict in favor of the plaintiff, concluding that the defendant had willfully discriminated against the plaintiff on the basis of his age.

After thoroughly reviewing the parties' legal memoranda and the evidence submitted to the jury, we grant defendant's motion under Rule 60(b) related to the plaintiff's failure to comply with the ADEA statute. We deny defendant's motion for judgment notwithstanding the verdict as to the non-renewal of the full-time teaching contract and grant the motion as to the October 4, 1987 advertised position and the back pay award. Plaintiff's request for reinstatement is denied.

## I. TIME BAR AND FAILURE TO COMPLY WITH STATUTORY CONDITION PRECEDENT

Defendant claims that the plaintiff failed to file a charge with the Equal Opportunity Employment Commission ("EEOC") within 180 days after the act of illegal discrimination occurred and that the complaint should have been dismissed due to his failure to file timely the EEOC charge. Even if the EEOC charge was timely filed, defendant contends that the complaint was filed more than two years after the act of discrimination, and that plaintiff failed to establish at trial that the University willfully violated his rights. Therefore, because of this failure to prove willfulness, the applicable ADEA statute of limitations was two years rather than three years for a willful ADEA violation, and the complaint was time barred. Furthermore, defendant argues that plaintiff never amended his charge before the EEOC and the Puerto Rico Department of Labor, and that his second claim of discrimination as to the October 4, 1987 position advertised in the "convocatoria" [1] is consequently time barred.

Defendant originally argued this point as part of its judgment n.o.v. and then amended its request in the form of motion under Rule 60 of the Federal Rules of Civil Procedure. In the initial stages of this case, the Court denied defendant's request for an extension of time to file its summary judgment based on this point. Subsequently, defendant filed a reconsideration on October 3, 1989, which defendant claims was neither granted nor denied. However, a perusal of the docket reveals that this Reconsideration was denied on October 6, 1989. *See* Docket # 38, entered on October 11, 1989. In response to defendant's reconsideration motion, plaintiff filed an Opposition and Motion to Strike Affirmative Defenses which was neither granted nor denied. *See* Docket # 31, entered on October 10, 1989. After the denial of the defendant's reconsideration, the defendants filed a "Reply to Opposition to Defendant's Request for Reconsideration ... and/or Counter Motion for Summary Judgment" on October 10, 1989. *See* Docket # 37, entered on October 11, 1989. This Counter Motion for Summary Judgment was neither granted nor denied. Therefore, we consider defendant's request proper under Rule 60(b)(1) and (6), which provide that the Court may relieve a party from a final judgment, order, or proceeding for reason of mistake, inadvertence, surprise, or excusable neglect, ((b)(1)), or for any other reason justifying relief ((b)(6)). *See Scola v. Boat Frances R., Inc.*, 618 F.2d 147, 154, 155–56 (1st Cir.1980) (construing "any other reason" to mean "extraordinary circumstances"). Although plaintiff claims that the defendant is not entitled to request the Court to consider these arguments because it failed to present them as a defense at trial, defendant preserved this defense in its answer and in the Pretrial Order. *See Federal Deposit Ins. Corp. v. Ramirez–Rivera*, 869 F.2d 624, 627 (1st Cir.1989); *accord Brooks v. Monroe Systems for Business, Inc.*, 873 F.2d 202, 205 (8th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989). Thus, we use our discretion to

---

1. A "convocatoria" is an announcement of an available position.

entertain the motion, *see, e.g., Rodriguez–Antuna v. Chase Manhattan Bank Corp.,* 871 F.2d 1, 3 (1989); *Ojeda–Toro v. Rivera–Mendez,* 853 F.2d 25, 28–29 (1st Cir. 1988), and conclude that the circumstances in this case justify the Court's consideration of defendant's statute of limitations arguments. *Cf. United States v. Belanger,* 598 F.Supp. 598, 601 (D.Me.1984) (relief granted under Rule 60(b): defendant filed motion prior to expiration of time for appeal, and trial court was in position to correct its own error).

■ Under the ADEA, no civil action may be commenced by an individual until sixty days after a charge alleging unlawful discrimination has been filed with the EEOC. The EEOC charge must be filed within 180 days after the alleged unlawful practice occurred. 29 U.S.C. § 626(d)(1) (1985). The EEOC, upon receipt of such charge, must promptly notify all persons named in the charge as prospective defendants and must also attempt to eliminate any allegedly discriminatory practice through informal conciliation methods. 29 U.S.C.A. § 626(d). Courts have consistently dismissed parties in an ADEA action when these statutory procedures have not been followed. *See, e.g., Michelson v. Exxon Research and Engineering Co.,* 808 F.2d 1005, 1009 (3d Cir.1987) (failure to file writing sufficient to constitute charge resulted in summary judgment for defendant); *Jay v. International Salt Co.,* 694 F.Supp. 207, 208 (W.D.La.1988), *aff'd on other grounds,* 868 F.2d 179 (5th Cir.1989) (failure to file any charge pursuant to § 626(d) requirements entitled defendant to summary judgment). However, these statutory conditions precedent do not constitute jurisdictional prerequisites and are therefore subject to equitable modification. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (Title VII condition precedent is not jurisdictional); *Calderón v. Banco Santander–Puerto Rico,* 671 F.Supp. 898 (D.P.R. 1987) (180 day period ADEA provides for filing EEOC charge is not jurisdictional requirement).

■ Generally, a cause of action in an age discrimination case accrues when the employee receives notice of the discriminatory act, not the date when the decision becomes effective. *Shockley v. Vermont State Colleges,* 793 F.2d 478, 481 (2nd Cir. 1986) (citing *Chardón v. Fernández,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981); *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)). In the *Delaware State College v. Ricks,* a Title VII case involving a professor's denial of tenure, the Supreme Court held that the plaintiff's cause of action accrued when he was notified by the Board of Trustees of its *final* decision that he was denied tenure. 449 U.S. at 261, 101 S.Ct. at 505–06, 66 L.Ed.2d at 442–443. Later on, *Chardón v. Fernández,* a political discrimination case in which several non-tenured administrators in the Puerto Rico Education Department were terminated, the Court emphasized that "the proper focus is on the time of the *discriminatory act,* not the point at which the *consequences* of the act become painful," 454 U.S. at 8, 102 S.Ct. at 29 (emphasis in original), so that the plaintiffs' cause of action accrued when they were informed by letter that their appointments would terminate on a specific date.

■ Defendant argues that Mr. Watlington learned of the nonrenewal of his full-time service contract as early as August or September of 1986, and not later than November of 1986. Although the plaintiff had reason to believe he might not have been offered the full-time service contract before January of 1987, it was not until January 7, 1987, when Professor Méndez finally offered plaintiff the three-course contract, that plaintiff was "clearly informed" that he would not receive the four-course teaching scheduling he had originally signed up for in August of 1986. In an ADEA case, although the notice of adverse employment decision need not be a formal written form in order to trigger the limitations period, *Leite v. Kennecott Copper Corp.,* 558 F.Supp. 1170, 1174 (D.Mass. 1983), the termination occurs when the employer announces a final decision, and not during a "pre-announcement time when the worker reasonably might know that his job

is in jeopardy." *Allen v. American Home Foods, Inc.*, 658 F.Supp. 451, 452, (N.D.Ind. 1987) (citations omitted). Thus, Mr. Watlington's EEOC charge, filed on May 6, 1987, *see* Plaintiff's Exhibit 20, was timely filed within 180 days after January 7, 1987, when he was clearly informed that his full-time service contract would not be renewed.

■ Defendant also argues that the plaintiff's complaint was filed beyond the two-year limitation period. Under the ADEA, a cause of action must be commenced *within two years after it accrues*, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued. 29 U.S.C. § 626(e) (referring to 29 U.S.C. § 255 statute of limitations provision). Because the plaintiff's action accrued on January 8, 1987, and the complaint was filed on January 9, 1989, plaintiff's complaint was timely filed. Moreover, because we uphold the jury's finding of willfulness, *see* Section III D, *supra*, the complaint was certainly filed within three years after the cause of action accrued, the applicable time limitation for willful violations of ADEA.

■ Finally, defendant claims that the discriminatory actions taken after October 4, 1987, were never the subject of an EEOC charge and should therefore be dismissed as time barred. Plaintiff contends that these acts were within the scope of the EEOC charge originally filed and that the additional filing of another charge was unnecessary.

As mentioned above, the ADEA statute requires that a plaintiff file an EEOC charge within 180 days after the alleged discriminatory action. The purpose of this notice/exhaustion of remedies requirement is to encourage settlement of discrimination disputes through conciliation and voluntary compliance, *Miller v. International Tel. & Tel. Corp.*, 755 F.2d 20, 26 (2d Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985), and to give formal notice to the employer and prospective defendant that the charges have been made against it. *Powers v. Grinnell Corp.*, 915

F.2d 34, 37–38 (1st Cir.1990) (quoting *Kloos v. Carter–Day Co.*, 799 F.2d 397, 400 (7th Cir.1986)). A claim may not be brought in federal court unless this statutory condition precedent has first been met. *Cf. Johnson v. General Electric*, 840 F.2d 132, 139 (1st Cir.1988) (Title VII case). A complaint related to a charge brought before the EEOC, but which was not specifically filed as a separate EEOC complaint must "reasonably be expected to ... have been within the scope of the EEOC's investigation" in order to meet this statutory prerequisite. *Id.* (citing *Miller*, 755 F.2d at 23–24). *See also Turner v. Orr*, 804 F.2d 1223, 1225 (11th Cir.1986); *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir.1986); *Waiters v. Parsons*, 729 F.2d 233, 237 (3rd Cir.1984); *Walters v. President & Fellows of Harvard College*, 616 F.Supp. 471 (D.Mass.1985).

In this case, plaintiff's charge filed with the EEOC stated the following:

> In November 1986, Dr. Angel D. Cruz Báez ... informed me that my contract would not be renewed.
>
> In December, I notified Dean Saul Pratts of my availability to teach on a full time basis. Dean Pratts told me that I would be considered for a contract along with other candidates. However, he emphasized that there were several candidates with qualifications as good as mine or better, as well as being younger. In January, Dean Pratts' aide, Dr. José L. Méndezoffered [sic] me a part time contract of three courses. I did not accept because I considered that I was being discriminated against due to my age.

Plaintiff's Exhibit 20.

Plaintiff claims that the cause of action encompassing the UPR's failure to hire him for the October 4, 1987 convocatoria and events ensuing thereafter are within the scope of this EEOC charge and to require a separate filing for the events occurring after October 4, 1987 would be equivalent to creating a "needless procedural barrier" for plaintiff. We disagree.

Mr. Watlington's EEOC complaint stated certain factual allegations surrounding the

non-renewal of his contract in *January of 1987.* Many of the facts underlying the failure to hire plaintiff in October 1987 and thereafter are new facts which were not within the scope of the original EEOC investigation, such as the allegation that plaintiff's application was never received by the Personnel Committee, and the claim that Professor Julio Muriente, a younger professor, was hired outside the normal hiring procedures of the University. Although the plaintiff claims that the defendant was put on notice because the Anti–Discrimination Unit sent to defendant the plaintiff's job application for the October 4, 1987, advertised position, the EEOC and the Anti–Discrimination Unit were never provided the information and the opportunity to "eliminate the alleged unlawful practices" related to the events occurring after October 4, 1987. *Kloos,* 799 F.2d at 400 (quoting H.R.Conf.Rep. No, 950, 95th Cong., 1st Sess. 12, *reprinted in* 1978 U.S. Code Cong. & Admin.News 504, 528, 534). Therefore, the events occurring in October of 1987 and thereafter could not have reasonably been expected to have come under administrative investigation.

Moreover, even if plaintiff were to contend that the acts occurring after October 4, 1987, were part of a continuous practice of discrimination, this theory of continuing violation must have been asserted both in the EEOC charge and in the complaint. *Miller,* 755 F.2d at 25 (citing *Ricks,* 449 U.S. at 257, 101 S.Ct. at 503; *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977)). Thus, because the plaintiff failed to file a new charge with the EEOC, and the events occurring after October 4, 1987 were not within the scope of the EEOC charge filed, we conclude that the events occurring after October 4, 1987 were not properly before this Court and the jury.

## II. JUDGMENT NOTWITHSTANDING THE VERDICT

At the close of all evidence in the case, the defendant moved for a directed verdict, thereby preserving its right to move for judgment n.o.v. *See* Fed.R.Civ.P. 50. The Court denied the motion. As mentioned above, the jury found for the plaintiff. Defendant has renewed its motion as a motion for judgment non obstante veredicto.

█ Rule 50(b) of the Federal Rules of Civil Procedure provides that a party who has moved for a directed verdict "may move to have the verdict and any judgment thereon set aside and to have judgment entered in accordance with the party's motion for a directed verdict...." On a motion for judgment notwithstanding the verdict,

> The trial judge must view all of the evidence and inferences flowing therefrom in the light most favorable to the non-moving party. Such a motion should be granted only if, as a matter of law, no conclusion but one can be drawn.

*Michael J. Foley v. Rust International,* 901 F.2d 183, 184 (1st Cir.1990) (citing *Austing v. Lincoln Equipment Associates, Inc.,* 888 F.2d 934, 937 (1st Cir.1989)). If fair-minded jurors could differ, then the judgment n.o.v. cannot stand. *Jorgensen v. Massachusetts Port Authority,* 905 F.2d 515, 518 (1st Cir.1990). However, "the party for whom the jury found is not entitled to 'unreasonable inferences which rest on conjecture and speculation.'" *Id.* The decision to grant the motion "must be made without evaluating the credibility of the witnesses or the weight of evidence and without attempting to resolve conflicting testimony." *MacQuarrie v. Howard Johnson Co.,* 877 F.2d 126, 128 (1st Cir.1989).

Defendant UPR claims that no reasonable trier of fact could have concluded that it discriminated against Mr. Watlington for several reasons. First, it argues that the plaintiff failed to present any evidence that would establish a presumption of age discrimination. It further claims that even if plaintiff presented a prima facie case of age discrimination, plaintiff failed to rebut the University's reasons for refusing to renew the plaintiff's contract or place plaintiff in tenured-track position.

Alternatively, the defendant argues that the jury erred in granting the plaintiff back pay because the plaintiff did not suffer any

loss of income during the years when he was affected by the discriminatory acts.

In an age discrimination case, the "inquiry is 'whether the plaintiff has produced evidence from which a trier of fact might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.'" *Cruz v. Avon Products, Inc.*, 693 F.Supp. 1314, 1318 (D.P.R.1988) (citing *Cazzola v. Codman & Shurtleff, Inc.*, 751 F.2d 53, 54 (1st Cir.1984) (other citations omitted)).

### A. *Non-renewal of Full-time Service Contract*

Plaintiff had been hired to teach in the UPR's Department of Geography on a full-time service contract basis beginning in January of 1985. His teaching contract was renewed twice, the first renewal covering the January 1985 semester, and the second covering the September 1986 semester. Plaintiff testified that on August 29, 1986, the Geography Department met and prepared the Class Program for the winter 1987 semester. (Tr. 34). At that meeting, Mr. Watlington signed up to teach four classes for the winter semester. *See* Plaintiff's Exhibit 16. According to the testimony of plaintiff, in November of 1986, Professor Angel Cruz, a member of the Personnel Committee of the Geography Department, informed the plaintiff that there was a possibility that his teaching contract would not be renewed and that other candidates were being considered for his position. (Tr. 28).

In response, the plaintiff went to speak with Professor José Luis Méndez, then acting director of the Geography Department, who told him that there were a number of candidates being considered for Mr. Watlington's position and that he should speak to Dean Pratts, who had requested a list of the candidates. (Tr. 29). Mr. Watlington then sent a letter to Dean Samuel Pratts, Dean of Social Sciences, reiterating his interest to continue working as a full-time teacher in the Geography Department dur-

ing the January 1987 semester. *See* Plaintiff's Exhibit 19. Subsequently, the plaintiff privately met with Dean Pratts in December of 1986, at which time the dean informed the plaintiff that there were a number of very good candidates being considered for the position, candidates with qualifications as good or better than plaintiff's, "and younger." (Tr. 31).

In January of 1987, before the winter semester began, plaintiff was informed that he would not be teaching the twelve credits he had signed up for, and that one of his classes had to be given to a new professor, Julio Muriente,[2] because there had been a conflict in classes. (Tr. 33, 35). Plaintiff's other scheduled class was given to a tenured professor, Professor Cadilla, because one of Cadilla's courses had been closed, and as a tenured professor he had a priority in receiving another course to complete his schedule. (Tr. 35). In January before the semester began, Professor Méndez ultimately offered the plaintiff a part-time service contract for a three-course class schedule, which included a course Professor Cadilla offered to relinquish to the plaintiff. (Tr. 36). Mr. Watlington rejected the contract. (Tr. 40). Subsequently, Julio Muriente accepted a part-time service contract for a two-course class schedule for the January 1987 semester. The parties have stipulated that two of the three courses offered to the plaintiff for the first semester of 1987 were taught by Julio Muriente.

Plaintiff claims that this evidence supports a prima facie showing of age discrimination because the UPR's decision not to offer him a full-time service contract or a tenured-track position for the January 1987 semester was illegally based on his age. The evidence presented at trial clearly meets two elements of the prima facie age discrimination case under ADEA, *see, e.g., Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, 153 (1st Cir.1990); *Loeb*

---

**2.** The record reflects that Julio Muriente is younger and less qualified than the plaintiff. He is about thirty-five years old and he has a Master's degree in geography. Plaintiff obtained a Master's degree and is presently a candidate for a Ph.D. in geography. Plaintiff has an "ABD," which means "all but dissertation." He has completed all his courses for his Ph.D. except his dissertation research.

*v. Textron, Inc.*, 600 F.2d 1003, 1013–14 (1st Cir.1979), since plaintiff was within the protected class (he was over 40 years old), and plaintiff was qualified for and adequately performed his job.

■ The final two elements of the prima facie case require a showing that: plaintiff was fired or discharged, and the employer sought a replacement with qualifications similar to the discharged employee's, thus demonstrating a continued need for the same services and skills. *Loeb*, 600 F.2d at 1013–14; *see also Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1335 n. 2 (1st Cir.1989) (clarifying final element of prima facie case in discharge context). In this case, there was evidence presented that the UPR did not offer Mr. Watlington a full-time (four class) service contract because of a scheduling conflict. Eventually, Professor Méndez offered the plaintiff a three-course service contract which was rejected. Essentially, plaintiff maintains that this offer was inadequate, and that he was forced to reject it since defendant UPR knew he was only interested in a full-time service contract. This evidence is enough to sustain the third prong of the prima facie case as the pay cut associated with the reduced course load is sufficient to constitute a constructive discharge or adverse employment decision actionable under ADEA. *See, e.g., Spear v. Dayton's*, 771 F.2d 1140, 1143 (8th Cir.1985) (reduction in working hours sufficient to establish prima facie element of constructive discharge or adverse employment consequences); *Cazzola*, 751 F.2d at 55 (job change which entailed less responsibility and day-to-day dealings with supervisor who criticized plaintiff sufficient to constitute constructive discharge).

■ As to the final element of plaintiff's prima facie case, the plaintiff offered evidence that prior to his rejection of the part time contract, one of his courses was re-assigned because of a course conflict to Julio Muriente, a professor who is outside the protected age group. Subsequently, Muriente was offered a two-class teaching contract. Therefore, the need for the same teaching skills and services was demonstrated, and the last element of the prima facie case has been fulfilled.[3] Thus, plaintiff properly established his prima facie case.

■ Our inquiry must therefore proceed to determine whether the defendant has come forward with some legitimate, non-discriminatory reason justifying its adverse employment decision. *Freeman*, 865 F.2d at 1335. After the employer articulates some reason for making its adverse employment decision, the plaintiff has the ultimate burden of showing that the reason was a pretext for age discrimination, *id.* at 1336, and that the defendant intentionally discriminated against the plaintiff. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403, 410 (1983) (citing *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). In this case, the defendant's proffered reasons for not renewing Mr. Watlington's full-time service contract were that there was a conflict in his class schedule and that only two courses were available for service contract. (Tr. 35, 240, 318). The defendant further claimed that it was unable to offer the plaintiff a full-time service contract because the funds which were going to pay his salary were committed to Professor Farouk, who had returned from unpaid leave of absence. (Tr. 334). The parties have stipulated that plaintiff substituted Professor Farouk, who was on leave of absence without pay, and that the source of payment for plaintiff's contracts came

---

**3.** Although defendant argues that this last element of the prima facie case has not been met because the plaintiff was not "replaced," since Muriente was only given a two course contract, we note that at this stage of the case, the rigid, mechanized structure of the prima facie case " 'drops from the case,' and 'the factual inquiry proceeds to a new level of specificity.' " *United*

*States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403, 410 (1983) (citations omitted). Therefore, defendant's argument that there was no need for a full-time professor and that Muriente was not a replacement is part of its pretext argument. *See* page 327, *supra*.

from the account provided for Professor Farouk's position.

In order to rebut defendant's reason for reducing plaintiff's contract to nine credits, Dr. Cruz, plaintiff's witness, testified that there was no course in conflict and that there has never been a conflict which has not been resolved in the Geography Department. (Tr. 116). Thus, in light of this conflicting evidence, and the evidence concerning Dean Pratts' statement, the jury was entitled to conclude that the defendant's proffered reason for not offering the plaintiff a full-service contract was a pretext for age discrimination. *Brooks v. Monroe Systems for Business, Inc.*, 873 F.2d 202, 204 (8th Cir.), *cert. denied*, ⸺ U.S. ⸺, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989). *Cf. Freeman*, 865 F.2d at 1341–42 (circumstantial evidence when considered with plaintiff's "scant" direct evidence of age discrimination, was sufficient to allow the jury to decide the issue of age discrimination). Therefore, we cannot say that " 'there is a total failure of evidence to prove plaintiff's case' " that defendant's proffered reasons were a pretext. *Ferrer v. Zaya*, 914 F.2d 309, 310–11 (1st Cir.1990).

### B. *October 1987 Advertisement for Tenured–Track Position*

█ Plaintiff's case also encompassed a claim th·t the UPR's decision to deny him a tenure-track position which was advertised in *El Nuevo Dia* in October of 1987 was based on his age. Although we have concluded that plaintiff's claim covering the events occurring after October 4, 1987 advertisement were not within the scope of the original EEOC charge filed, *see* section I, *supra*, we alternatively conclude that even if they were within the scope of the EEOC charge, plaintiff has not proven its prima facie case as to the failure of defendant to hire plaintiff for the October 4, 1987 advertised tenured-track position. Therefore, judgment n.o.v. is granted as to this claim.

The parties have stipulated that on October 4, 1987, a newspaper ad stated that the qualifications for the position of Geography Professor were a doctorate or doctoral candidate having a background in one of the following specialties: Human Geography, Urban Geography, Geography Resources, or Cartography. This position was available because of a vacancy left by Professor Farouk Gammal. The parties have further stipulated that plaintiff applied for a position as Professor of Geography in response to the newspaper ad of October 4, 1987, and that plaintiff was not appointed to the position of Professor of Geography announced in the newspaper. In 1988, plaintiff wrote several letters expressing his discontent with the treatment he had been receiving from the UPR Geography Department and requesting further investigation regarding his accusations of age discrimination. *See, e.g.*, Exhibits 24, 26, 28. In addition, plaintiff sent several letters to UPR officials reiterating his interest in Professor Farouk's position. In a letter dated December 20, 1988, sent to Dr. Samuel Silva Gotay, Acting Director of the Geography Department, plaintiff stated that "I am only available for a full time 'career' appointment (that is *'tenure-track'*). My capacity warrants precedence over recent candidates with less preparation and experience." Plaintiff's Exhibit 29 at 3 (emphasis added).

At trial, plaintiff presented evidence that Julio Muriente had occupied a position in the Geography Department in various types of contracts (full-time, part-time, and temporary appointment)[4] throughout the period following October of 1987 until December of 1989. *See, e.g.*, Exhibits 26, 36. However, no evidence was presented that Muriente was *appointed* to the tenure track position as advertised in October 4, 1987. In fact, Professor Cruz testified that "[t]he position is still available...." (Tr. 123), and agreed that Professor Farouk's position has not been given to anyone. (Tr. 170). *See also* (Tr. 197). Although two candidates were interviewed in January of 1988 for the position, the Personnel Committee, which is responsible for recom-

---

**4.** Although this temporary appointment, *see* Exhibit 36, could lead to a tenure track position, it is not, in and of itself, a tenured track position.

(Tr. 136, 168). If a temporary contract is turned to a probationary contract, the contract could eventually lead to tenure. (Tr. 136).

mending who should occupy the tenure track position, has never made any recommendation for Farouk's position. (Tr. 171, 196). After January of 1988, the Committee has never met to consider a replacement for Professor Farouk's position. (Tr. 171).

In the case of plaintiff's failure-to-hire claim, he has met two of the four prima facie requirements. First, plaintiff is within the protected age group, and he applied and was qualified for a job which the employer was seeking applicants.[5] However, plaintiff has failed to satisfy the third and fourth prongs of the prima facie case which require that: plaintiff show an adverse employment decision was taken against him, or in this failure-to-hire context, show that he was *rejected* from the job; and subsequently the position remained open and the employer continued to seek applicants. *McDermott v. Lehman,* 594 F.Supp. 1315, 1322 (D.Me.1984) (citation omitted).[6] *See also Reed v. Signode Corp.,* 652 F.Supp. 129, 133–34 (D.Conn. 1986) (in failure to hire case, third element involves proof that plaintiff was not hired and fourth element requires proof that employer hired a substantially younger person or kept the position open to receive one). Notwithstanding plaintiff's evidence that Julio Muriente occupied a position in the Geography Department, plaintiff failed to show that he had been rejected as a possible replacement for Professor Farouk's position. At the time of trial, Professor Farouk's position had not been filled, and Mr. Watlington was still a candidate for the position. (Tr. 170–71). Moreover, plaintiff did not present any evidence that the UPR has continued to seek applicants for the Farouk position. Although the Personnel Committee had discussed the qualifications of several candidates to fill Farouk's position in November and December of 1986, and had interviewed applicants in January, the Committee "has never submitted any candidates for anything." (Tr. 171). *Cf. Reed,* 652 F.Supp. at 134 (plaintiff's requests to be considered were overlooked and three candidates considered were younger than plaintiff; employer *ultimately hired one of them,* thus warranting an inference of age discrimination).

Therefore, because plaintiff has failed to produce any evidence that he was rejected for this job and that the Department continued to seek applicants for the position after the October 4, 1987 advertisement, plaintiff has failed to sustain the final elements of the prima facie case related to the defendant's failure to hire him for the advertised tenure track position. Accordingly, judgment n.o.v. must be entered against the plaintiff as to this claim.

### C. *Back Pay Award*

Defendant also claims that the jury's award of $75,000 in damages cannot stand because the jury erred in computing the amount of back pay.[7] Defendant asserts that plaintiff's earned income since the alleged violation of the ADEA up to the date of trial exceeded the amount of pay that he would have received but for the violation. Therefore, the award should be set aside. Plaintiff counters that the evidence presented at trial was sufficient to sustain the jury's award of $75,000. After reviewing the evidence presented to the jury, we conclude that the award must be reduced

---

5. The newspaper advertisement states "Ph.D. or Candidate for a Ph.D.", and Mr. Watlington has an ABD; therefore, he qualifies as a candidate for a Ph.D. (Tr. 123).

6. We note that plaintiff's age discrimination claim regarding the October 4, 1987 advertised position involves a failure to hire claim rather than a constructive discharge claim. Thus the elements of the prima facie case differ in this context. *See, e.g., McDermott v. Lehman,* 594 F.Supp. 1315, 1322 (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

7. Plaintiff has filed a Motion Requesting Amendment of Judgment, which defendant has opposed. Plaintiff requests that the Court double the jury award of $75,000 to reflect the jury's finding that the defendant willfully violated the ADEA. *See* 29 U.S.C. § 626(b) (providing for liquidated—double—damages in cases of willful violations). In addition, defendant has requested an amendment of the judgment based on the same reasons it requests the Judgment n.o.v. as to the jury award.

to $23,950.[8]

The ADEA damages section provides that, "in any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter...." 29 U.S.C. § 626(b). The statute further provides that a "person shall be entitled to a trial by jury ... for recovery of *amounts owing* as a result of a violation of this chapter...." *Id.* at § 626(c)(2) (emphasis added). Because jury trials in ADEA cases are similar to a common law suit for back wages for breach of contract, the plaintiff suing under ADEA may recover only the pecuniary benefits connected to the job. *Kolb v. Goldring, Inc.* 694 F.2d 869, 872 (1st Cir.1982). These "make-whole" damages are meant to put the plaintiff in the economic position he would have been in but for the discrimination. *Id.* (citing *Loeb,* 600 F.2d 1003)); *Rodriguez v. Taylor,* 569 F.2d 1231, 1243 (3d Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978). In such cases involving economic loss, the jury is free to select the highest figures for which there is an adequate evidentiary basis, but it cannot go higher; the verdict will be reduced or set aside only if it is shown to exceed "any rational appraisal or estimate of the damages that could be based upon the evidence before the jury." *Segal v. Gilbert Color Systems, Inc.,* 746 F.2d 78, 81 (1st Cir. 1984). The calculation for back pay calls for the calculation of "items of pecuniary or economic loss such as wages, fringe, and other job related benefits," *Kolb,* 694 F.2d at 872 (quoting H.R.Rep. No. 950, 95th Cong., 2d Sess. 13, *reprinted in* 1978 U.S. Code Cong. & Ad.News 504, 528, 535), less the amounts the plaintiff actually earned after the discriminatory action. *Id.; Rodriguez,* 569 F.2d at 1243. The damages

begin to run from the date the plaintiff was unlawfully refused employment until the date the jury returns the verdict. *Hodgson v. First Federal Savings & Loan Ass'n,* 455 F.2d 818 (5th Cir.1972).

In this case, when the UPR failed to renew Mr. Watlington's full-time service contract, he had previously earned $1,352 for the full-time service contract which covered the months of August to December of 1986. *See* Stipulation #11. The parties have agreed that no benefit other than the salary was covered in this service contract. After plaintiff refused to accept the offer for a part-time service contract, he remained unemployed from January 1987 until May of 1987. From June of 1987 until July of 1988, plaintiff worked for the "Asociación de Productos de Puerto Rico," as a consultant earning $2,000 per month. (Tr. 85–85). Then, from July to December of 1988, plaintiff was again unemployed. In January until June of the following year, 1989, plaintiff obtained employment as a consultant for the "Organización de Agricultores," and earned $1000 per month. Finally, in July of 1989 until the date of trial, April of 1990, plaintiff resumed his work at the Department of Agriculture as a part-time consultant. He earns $2000 per month at this job. (Tr. 87). The evidence at trial revealed that as of July of 1989, Julio Muriente received an appointment for a monthly salary of $1,450, which included benefits.

After finding that the defendant had willfully discriminated against plaintiff because of his age, the jury returned a verdict in favor of the plaintiff for $75,000. Plaintiff argues that in calculating this amount, the jury used the monthly $1,450 that Julio Muriente earned in July of 1989, or the $1,450 to be paid as the salary for

**8.** Defendant also claims that the plaintiff is not entitled to any backpay because he rejected the offer for a three-course service contract paying $700 per month and therefore failed to mitigate damages. This argument is without merit. Only an unconditional offer of employment for the same or a *substantially similar* position tolls the accrual of back pay liability. *See Ford Motor Co. v. EEOC,* 458 U.S. 219, 232, 102 S.Ct.

3057, 3066, 73 L.Ed.2d 721, 732–33 (1982) (under Title VII, plaintiff forfeits right to back pay if he refuses a job substantially equivalent to the one he was denied). In this case, the offer of the part-time nine credit contract entailed a cut in salary approximately equal to half of what plaintiff would have earned with a full-time service contract. (Tr. 40).

the tenured track position announced in October of 1987. According to plaintiff, January of 1987 until December of 1990 is 48 months. By multiplying the 48 month time period by a monthly salary of $1,450, the plaintiff's total loss of income is $67,-000. He further claims that none of plaintiff's consultant earnings should be offset against what he would have earned in the past because he held consulting jobs while he was a professor. *See, e.g., Lilly v. City of Beckley, West V.,* 797 F.2d 191 (4th Cir.1986) (supplemental "moonlighting" earnings not used to reduce backpay because plaintiff could have simultaneously performed both jobs); *Rodriguez,* 569 F.2d at 1243 (successful ADEA plaintiff entitled to back pay in amount he would have earned but for discrimination less wages actually earned that could not have been simultaneously performed). Therefore, according to the plaintiff, based on the evidence at trial, the jury's verdict was not beyond any rational basis or appraisal of the evidence presented to it.

Defendant claims that the total amount plaintiff would have received but for the discrimination should have been offset by plaintiff's earnings as a consultant. Moreover, the figure to be used is $1,352, the amount plaintiff received when he had a full-time service contract, and the number of months to be multiplied is 27, the number plaintiff would have worked under the full-time service contract.

■■■ Although we note plaintiff's argument regarding his ability to work as a consultant while he was a professor, we are also cognizant that the essential purpose of damages awards in ADEA cases is compensatory. Accordingly, damages for back pay cease when the plaintiff begins to earn higher wages than what he would have received from his previous job. *See, e.g., Matthews v. A–1, Inc.,* 748 F.2d 975 (5th Cir.1984); *Di Salvo v. Chamber of Commerce of Greater Kansas City,* 568 F.2d 593 (8th Cir.1978); *Nordquist v. Ud-*

*deholm Corp.,* 615 F.Supp. 1191, 1203–04 (D.Conn.1985). Therefore, in an ADEA case, the interim period to consider when calculating set-off against back pay damages a plaintiff may be entitled to is the period from the date of termination to the date of employment at an equal or higher salary. *Nordquist,* 615 F.Supp. at 1204. In this case, plaintiff's contract was not renewed in January of 1987, and the jury's verdict was returned in April of 1990. Thus, a period of forty months elapsed over the time plaintiff was initially discriminated against until the jury's verdict. During twenty-three of these forty months, plaintiff was earning $2,000, more than plaintiff ever earned per month at UPR (Tr. 88), and more than the $1,450 per month Julio Muriente earned. Thus, because plaintiff is not entitled to back pay for the periods during which he was earning more than what he previously earned or could have earned had he received a raise at UPR, a reduction in the amount of at least $46,000 (23 months × $2,000) is warranted. *Cf. Leftwich v. Harris–Stowe State College,* 702 F.2d 686, 693 (8th Cir. 1983) (under year-by-year method of back pay calculation, plaintiff's interim earnings in any year exceeding wages lost due to discrimination are "excess" to be deducted from that year only, not from other years to which plaintiff is entitled to back pay).

■■■ As to the use of the $1,450 figure for calculating the back pay, there was evidence that Muriente, who at one point replaced plaintiff to teach a part-time contract and then continued working in the Department, was earning this amount of money per month. Therefore, the jury was entitled to use this figure in calculating damages since recovery for raises an employee might reasonably have anticipated had he not been wrongfully discharged are permissible when the jury has been presented with such evidence. *Kolb,* 694 F.2d at 872.[9] However, even if we accept this figure, the jury's calculation could not

**9.** Although plaintiff further claims that the jury was entitled to use a figure even larger than the $1,450, since the salary of Muriente included benefits, this argument is meritless. The plaintiff presented no evidence whatsoever from which the jury could calculate what the dollar value of such benefits might have been. *E.g., Kolb v. Goldring,* 694 F.2d 869, 873–74 (1st Cir. 1982).

**332**

have included any time period beyond April 1990. We further agree with the plaintiff that Mr. Watlington's $1,000 per month earnings as a part-time consultant should not be offset against the damage award. Plaintiff presented evidence that he worked part-time as a consultant while he was a professor. (Tr. 93). In the case of such "moonlighting" setoffs, the defendant bears the burden of proving that Mr. Watlington could not have undertaken this consulting work had he been hired on a full-time contract basis. *Rodriguez*, 569 F.2d at 1243. Thus, based on these figures, we think the upper limit of a justifiable sum the jury could have calculated is $23,950, which is equal to $1,450 times 12 months (representing the period when plaintiff was earning less than what he could have earned at UPR).

We therefore conclude that the jury's determination of compensatory damages in the amount of $75,000 was excessive. For the reasons stated above, the verdict of $75,000 shall be reduced to $23,950.

### D. *Willfulness*

■ Finally, defendant contends that the jury's finding that the age discrimination was willful cannot stand because the evidence was legally insufficient to find a willful violation of the ADEA on defendant's part.[10]

At trial, the Court instructed the jury that the "violation was willful if the defendant knew or showed reckless disregard for the fact that their conduct was unlawful and prohibited by the ADEA. In other words, the action taken cannot be accidental, inadvertent or negligent; the defendant must have been aware of the age discrimination law when it committed the act." This instruction conforms with the formulation of the willfulness standard set forth in *Trans World Airlines v. Thurston*, 469 U.S. 111, 127–28, 105 S.Ct. 613, 624–25, 83 L.Ed.2d 523 (1985).

After reviewing the evidence supporting the jury's finding of willfulness as to plaintiff's age discrimination claim related to the non-renewal of his full-time service contract, we conclude that the jury's finding of willfulness must stand. The jury was entitled to find that defendant acted in reckless disregard of ADEA on the basis of Dean Pratts' comment combined with the other pretextual evidence presented at trial which included Dean Mendez' statement that the UPR was unable to offer plaintiff a four credits of research (a "descarga") in order to create a full-time service contract, because "there was no mood for it," (Tr. 37), and the re-assignment of plaintiff's Geography of Latin America class to Julio Muriente. Thus, a liquidated damage award $47,900, a doubling of the reduced jury verdict of $23,950, is warranted.

### III. REQUEST FOR TENURE APPOINTMENT

■ Plaintiff has filed a motion requesting that he be appointed to a tenure track position as a Geography professor in the University of Puerto Rico Geography Department. He claims that he is entitled to this relief in order to make him whole.

In an age discrimination case, the court may grant "such legal or equitable relief as may be appropriate to effectuate the purposes of [the ADEA], including without limitation judgment compelling . . . reinstatement." 29 U.S.C. § 626(b). Even when a plaintiff is successful on an age discrimination claim, the determination of whether reinstatement is appropriate " 'lies solely within the sound discretion of the trial court.' " *Quinn v. New York State Elec. & Gas Corp.*, 621 F.Supp. 1086, 1093 (S.D.N.Y.1985) (citation omitted). In determining whether such relief is appropriate, the district court must "articulate its rationale for refusing to compel employment of a plaintiff who has suffered discrimination."

**10.** The ADEA expressly provides for the award of liquidated damages when a finding of a willful violation occurs. 29 U.S.C. § 626(b) (1985). These damages are computed by doubling the amount awarded to a successful ADEA plaintiff. Therefore, if a willful violation is found, the plaintiff will recover twice the damages he incurred resulting from the unlawful action, 29 U.S.C. § 216(b), incorporated by 29 U.S.C. § 626(b), and the payment of such liquidated damages is mandatory. 29 U.S.C. § 216(c).

In light of plaintiff's failure to amend his EEOC charge and his failure to prove a prima facie case as to the position advertised in the paper, we conclude that appointing plaintiff to a tenured-track position in the Department of Geography would place the plaintiff in a better position than he was in at the time his full-time service contract was not renewed. In addition, because plaintiff had been able to earn more per month than what he would have earned under his full-time service contract and because he has received the additional award of liquidated damages, we conclude the reinstatement is not necessary to return the plaintiff to the economic status he would have occupied but for the UPR's failure to renew his full-time service contract.

## IV. ATTORNEY'S FEES

Finally, plaintiff requests attorney's fees. This request is unopposed. The ADEA incorporates a provision of the Fair Labor Standards Act, 29 U.S.C. § 216(b) (Supp.1990) which requires courts to allow successful ADEA plaintiffs to recover a reasonable attorney's fee and costs. 29 U.S.C. § 626(b). Moreover, the Equal Access to Justice Act ("EAJA"), 42 U.S.C. § 1988 (1983), authorizes a district court, in its discretion, to award reasonable attorney's fees to "prevailing" civil rights litigants. A plaintiff may be considered "prevailing" for purposes of attorney's fees if he succeeds on "'any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40, 50 (1983) (quotation omitted). The first step in determining the fee is calculating the lodestar figure which involves "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891, 896 (1984). The second step entails a consideration of the appropriateness of an upward adjustment to the lodestar figure. *Id.*

██ Upon its review of the petition, the Court finds that the application for attor-

ney's fees complies with the standards established by the First Circuit. Pursuant to *King v. Greenblatt,* 560 F.2d 1024, 1027 (1st Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978) and its progeny, "the court must secure from the attorneys a full and specific accounting of their time...." In this case, both Attorneys Moreda and Rivero participated in the preparation and trial of the case, and each one has submitted separate, verified schedules of actual time spent. The application for fees itemizes the work performed, the nature of work performed, the date the work was performed, and the hours performed for each task, and it divides the itemization into what tasks and hours each attorney spent in preparation and trial of the case. These separate statements constitute a "full and specific accounting" of each counsel's time spent on the case. *King,* 560 F.2d at 1027.

██ We conclude that the hourly rates of $125 charged by Attorney Moreda and $100 charged by Attorney Rivero are reasonable in light of the fees customarily charged for similar legal services and the information provided to the Court related to the experience and billing practice of these attorneys. *Calhoun v. Acme Cleveland Corp.,* 801 F.2d 558, 560 (1st Cir. 1986). However, after examining each attorney's application, we find that the Amendment for Application of Attorney's Fees filed by Mr. Rivero, *see* Docket No. 73, contains a miscalculation. Mr. Rivero lists 96 additional hours for work done after April 8, 1990, but the separate hourly entries only equal a total number of 24.75 hours rather than 96 hours. Accordingly, we reduce the number of additional hours to 24.75. Attorney Moreda has claimed a total number of hours as 75.75. Therefore, the case involved a total of 323.50 hours. Accordingly, Mr. Moreda requests attorney's fees in the amount of $9,468.75 and Mr. Rivero requests attorney's fees in the amount of $29,875.

██ Clearly, plaintiff has prevailed on his claim related to the defendant's willful discrimination as to its failure to renew his full-time service contract. However, as dis-

cussed above, plaintiff has not prevailed on his claim concerning the defendant's failure to hire him for the tenured-track position advertised in October of 1987. In a case such as this, where the claims for relief are based on related legal theories, much of the attorneys' time will be dedicated to the litigation as a whole, thus making the division by hours on a claim-by-claim basis difficult. In these cases, the district court must focus on the "overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940, 76 L.Ed.2d at 52. *See also Rogers v. Okin*, 821 F.2d 22, 25 (1st Cir.1987). "[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943.

After reviewing the schedules of fees submitted by the attorneys, it is apparent that there is no breakdown reflecting the time spent on plaintiff's different claims.[11] Cognizant that there is no precise rule or formula for making these determinations and that a court must exercise discretion in making this equitable judgment, *Hensley*, 461 U.S. at 436–37, 103 S.Ct. at 1941, we conclude that plaintiff was successful on his claim of willful age discrimination and that a reduction in attorney's fees of ⅓ appropriately reflects the success plaintiff has achieved on the failure to renew the full-time service contract issue. In prevailing on the issue of the renewal of the contract, the plaintiff obtained a determination that the defendant violated his rights under ADEA, and the attorneys' work on this claim necessarily involved some legal theories related to plaintiff's additional age discrimination claim. *Cf. Aubin v. Fudala*, 782 F.2d 287, 290–91 (1st Cir.1986) (discussing determination of fees in civil rights suits consisting of federal and pendent state claims). Because determining the extent of plaintiff's success is a practical question which involves a qualitative as well as quantitative judgment, *id.* at 290, we conclude that the ⅓ figure adequately reflects the "partial" victory plaintiff obtained. This award is proper in relation to the degree of success achieved in this case. Therefore, as prevailing party, plaintiff is entitled to an award of attorney's fees in the amount of $19,717.50 for Attorney Rivero and $6,249.38 for Attorney Moreda.[12]

## V. CONCLUSION

Wherefore, in view of the foregoing, the Jury Verdict of $75,000 is reduced to $23,950. Because we uphold the jury's finding of willfulness, a doubling of the verdict is warranted. The plaintiff shall therefore recover damages from the defendant in the total amount of $47,900, plus attorney's fees in the amount of $25,966.88.

Amended Judgment shall be entered accordingly.

IT IS SO ORDERED.

---

**11.** There is one September 30, 1989, listing for "Research regarding amendment to administrative charges," and another listing for "Draft motion to strike administrative defenses," but these are the only two entries which suggest any division according to plaintiff's different claims. *See* Plaintiff's April 18, 1990, Sworn Statement of Fees for Attorney Rivero.

**12.** We decline plaintiff's invitation to apply an upward adjustment of the attorney's fee award as applied in *Wildman v. Lerner Stores*, 771 F.2d 605 (1st Cir.1985). In this case, we conclude that an enhancement for the contingency of non-payment is unwarranted. The case did not involve an "exceptional" level of risk. *See Cortés–Quiñones v. Jiménez Nettleship*, 842 F.2d 556, 564 (1st Cir.), *cert. denied*, 488 U.S. 823, 109 S.Ct. 68, 102 L.Ed.2d 45 (1988). In addition, we conclude that the burdens borne by the lawyers do not warrant an application of any of the *Wildman* factors.