EDGAR HAROLD HARRIS, II,            )
                                    )
        Plaintiff/Appellee,         )
                                    )        Appeal No.
                                    )        01-A-01-9609-CH-00444
VS.                                 )
                                    )        Montgomery Chancery
                                    )        No. 91-68-153
DOMINION BANK OF MIDDLE             )
TENNESSEE and DOMINION              )
BANKSHARES MORTGAGE CORP.,          )
                                    )
        Defendants/Appellants.      )

FILED

May 23, 1997

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE


APPEALED FROM THE CHANCERY COURT OF MONTGOMERY COUNTY
AT CLARKSVILLE, TENNESSEE

THE HONORABLE JOHN H. GASAWAY, III, JUDGE


H. ROWAN LEATHERS, III
RANDALL C. FERGUSON
MANIER, HEROD, HOLLABAUGH & SMITH
First Union Tower - Suite 2200
150 Fourth Avenue North
Nashville, Tennessee 37219
        Attorneys for Plaintiff/Appellee

CHARLES R. RAY
211 Third Avenue North
P. O. Box 198288
Nashville, Tennessee 37219-8288
        Attorney for Defendant/Appellant


REVERSED IN PART, MODIFIED
AND REMANDED


BEN H. CANTRELL, JUDGE


CONCUR:
TODD, P.J., M.S.
KOCH, J.

# **O P I N I O N**

The plaintiff, Edgar Harold Harris, sued the Dominion Bank of Middle Tennessee for firing him because of his age. He also sued Dominion Bankshares Mortgage Group for refusing to hire him for the same reason. In each case the jury returned a verdict for the plaintiff for lost pay and benefits to the date of trial and for past and future humiliation and embarrassment. On appeal the defendants argue that the facts do not support the verdicts, that the verdicts award Mr. Harris a double recovery, that it was error for the trial judge to instruct the jury to return general verdicts, and that the trial judge's charge was otherwise erroneous.

## I.

At the age of fifty-five, Mr. Harris joined the First National Bank of Clarksville in 1983 as a Mortgage Loan Officer. In 1987, the bank was acquired by Dominion Bank of Middle Tennessee (hereafter Dominion Bank) but Mr. Harris' duties remained essentially the same. In November of 1990 the bank terminated Mr. Harris from his $33,800 per year job, allegedly because of a system-wide reduction in force. In 1991, Dominion Bank eliminated its mortgage department, and an affiliated company, Dominion Bankshares Mortgage Group (hereafter Mortgage Group) opened an office in Clarksville for the purpose of obtaining mortgages that could be sold in the secondary market. Mortgage Group advertised for clerical help to fill a position of mortgage loan processor. Mr. Harris applied for the job paying $13,000 to $16,000 but Mortgage Group turned down his application.

Mr. Harris sued Dominion Bank and Mortgage Group for discrimination under the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-401, et seq. The trial judge instructed the jury to return a general verdict on each claim. The jury found

for Mr. Harris on the wrongful discharge claim and awarded him $304,254 for lost wages and benefits to the date of trial and for humiliation and embarrassment, past and future. On the failure-to-hire claim, the jury returned a $225,000 verdict for Mr. Harris for the same elements of damages.

The trial judge denied Mr. Harris' motion for pre-judgment interest, front pay, and reinstatement, but awarded him discretionary costs and attorney's fees.

## II.

Before examining the verdicts themselves we will address two of the other issues raised by the appellants. The first is the issue of the general verdicts. The second is the type of proof required to establish a claim for humiliation and embarrassment under the Human Rights Act.

### A. The General Verdicts

The appellants requested that the jury be asked to answer specific interrogatories on the issues of liability and damages. Mr. Harris objected, and the trial judge instructed the jury to return a general verdict on each claim -- apparently on the basis of our decision in *Sasser v. Averitt Express*, 839 S.W.2d 422 (1992). But asking the jury to answer special interrogatories or to make special findings does not make the verdict a special verdict. See 75B Am. Jur. 2d *Trial* §§ 1836 and 1837. In the case most often cited as the authority for a party's right to a general verdict, our Supreme Court recognized that the jury could be asked to make special findings in the process. "[S]pecial issues or interrogatories are put to the jury to elicit their answers to <u>accompany their general verdict</u> for the purpose of ascertaining the basis of their verdict and testing its consistency with such answers." *Harbison v. Briggs Bros. Paint*

*Mfg. Co.*, 354 S.W.2d 464 at 469 (Tenn. 1962)(emphasis in the original). Therefore, the trial judge could have required the jury to answer the specific interrogatories.

We hasten to add, however, that there is no <u>right</u> to have special interrogatories submitted to the jury, either.[1] While our job would be made much simpler by the use of special interrogatories -- the instant case is a perfect example -- we think the question must be left to the sound discretion of the trial judge. Therefore we cannot find that asking the jury to return a single finding covering back wages and benefits <u>and</u> humiliation and embarrassment is reversible.

## B.  Humiliation and Embarrassment

The appellants argue that to sustain an award for humiliation and embarrassment under Tenn. Code Ann. § 4-21-306 the plaintiff must prove more than the humiliation and embarrassment typically associated with losing a job. The authority for this argument comes from federal cases construing federal statutes and the Sixth Circuit's opinion in *Campbell v. Rust Engineering*, No. 90-5679 (6th Cir., filed March 5, 1991). *Campbell*, however, sustained an award for humiliation and embarrassment under Tenn. Code Ann. § 4-21-306(7) where the court found no aggravating circumstances, and the injuries suffered were merely those normally associated with losing a job. The court did find the award excessive but merely suggested a remittitur rather than reverse the award altogether.

The cases construing other statutes are not very helpful, particularly the cases involving statutes that allow recoveries for mental distress, emotional harm, or loss of enjoyment of life. While these are not necessarily vaguer items than humiliation and embarrassment, we typically require a higher standard of proof for

---

[1]In some cases, the jury may have to answer specific questions in order to properly perform its function. Cases of comparative fault are a good example. *See McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992).

mental or emotional injuries as a guard against spurious claims. *See Swallows v. Western Electric Co., Inc.*, 543 S.W.2d 581 (Tenn. 1976); *Camper v. Minor*, 915 S.W.2d 437 (Tenn. 1996).

In this case, however, we see no indication that the legislature intended to restrict recoveries for humiliation and embarrassment by requiring corroboration or by requiring a higher degree of proof.

**III.**

**The Double Recovery**

The defendants assert that the two verdicts allow Mr. Harris a double recovery for lost wages and benefits from the time Mortgage Group refused to hire him until the date of the trial. A simple inspection of the two verdicts reveals that the appellants' contention is true -- if the jury truly awarded an amount for lost wages and benefits in each case to the date of trial. Compensation for the two wrongs would overlap for the period between the failure-to-hire and trial.

Recognizing this difficulty, Mr. Harris seeks to escape it by urging us to assume that the award for the failure-to-hire is all for past and future humiliation and embarrassment. He asserts that our duty is to construe the verdict in a way that will uphold it. *Newsom v. Markus*, 588 S.W.2d 883 (Tenn. App. 1979). We note, however, this important condition precedent in *Newsom*: we must first examine the terms of the verdicts to see if they <u>can</u> be construed as consistent.

Upon inspecting the second verdict, the first thing we note is the verdict form itself. We think it precludes an assumption that the second verdict covered only humiliation and embarrassment. The form recites that the verdict was for "lost compensation and benefits incurred by the plaintiff until the date of trial and for humiliation and embarrassment, past and future, . . . ." In addition, the only evidence touching Mr. Harris' humiliation and embarrassment over not being hired by the mortgage company was his testimony that he was upset when someone told him that his application had been thrown aside because the person doing the hiring thought Mr. Harris was "too old." In our opinion, that evidence does not entitle Mr. Harris to any compensation for humiliation and embarrassment. There is no evidence that anyone else in his community even knew that he had applied for the job, except for the persons who were directly involved. He had already been humiliated and embarrassed by losing his prior job, and the jury rewarded him for that, both "past and future." The additional hurts from not being hired to a much lower position would ordinarily be de minimus. An award to Mr. Harris for any humiliation and embarrassment from the failure-to-hire would involve pure speculation.

We are of the opinion, therefore, that the verdict for Mr. Harris on the failure-to-hire claim cannot be based on humiliation and embarrassment. Since it cannot include back pay either -- because he was awarded compensation at a higher rate for the wrongful discharge up to the date of trial -- we conclude that the award for the failure to hire must be reversed and dismissed.

## IV.

We next examine the judgment for the wrongful discharge. The bank asserts that age was not a factor in Mr. Harris' discharge, that the verdict was excessive, and that the jury charge was inaccurate and confusing.

### A. The Age Factor

Considering the evidence as a whole, we are convinced that the question of whether age was the reason Mr. Harris was fired was properly submitted to the jury. The bank's employee testified that they discussed Mr. Harris' age in making the decision to terminate him. Although the bank argues that the employee's remarks were "stray remarks" under the authority of *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405 (7th Cir. 1984) and not probative of age discrimination, when coupled with other evidence of disparate treatment of Mr. Harris and younger employees, a jury question was created on the age discrimination issue. Since there was some material evidence to support the verdict, it may not be set aside on appeal. Rule 13(d), Tenn. R. App. Proc.

### B. The Size of the Verdict

Mr. Harris presented expert proof showing that his lost wages and benefits amounted to $204,254.00 at the date of the trial. Therefore, this question boils down to whether $100,000 for past and future humiliation and embarrassment is excessive.

Mr. Harris offered the only testimony about his humiliation and embarrassment. His testimony was:

Question by Mr. Ray: Now after your termination what was your state of mind like, Mr. Harris? What was your psychological well-being like?

Answer: Well, probably one of the scariest positions I have ever been in because I owed a lot of money on my development in the subdivision. I didn't have any income and it was pretty humiliating to be the age that I was and to suddenly find out you no longer have a job.

Question by Mr. Ray: Did you have a problem sleeping?

Answer: Well, I didn't have a problem sleeping to the best I remember, but I had problems -- you know, it's a little embarrassing to get out in public and people think you're still at the bank and you're not.

Question by Mr. Ray: Did you have to tell people, "I've been terminated, I no longer have a job"?

Answer: That's true.

Question by Mr. Ray: How did that make you feel?

Answer: It don't make you feel good.

We think that a $100,000 award for the type of harm described by Mr. Harris is clearly excessive. He did not suffer any aggravated injuries; the discomfort he felt was the same anyone would feel over losing a job. *See Campbell v. Rust Engineering, supra*. Therefore, we suggest a remittitur to $20,000 for humiliation and embarrassment, making the total verdict for the wrongful discharge $224,254.

### a. Mitigation or Interim Earnings

Relative to the wrongful discharge verdict, the appellant alleges that Mr. Harris' claim must be reduced by the substantial earnings he received after the discharge.

Mr. Harris does not dispute the rule that says his damages for back pay cease when he begins to earn higher wages than he would have received from his previous job. *Watlington v. University of Puerto Rico*, 751 F.Supp. 318 (D.C. Puerto

Rico 1990). Instead, he argues that the income from his outside real estate activities were the result of the continuation of a business he had conducted in prior years with the full knowledge and consent of his employer. The record shows a substantial increase in Mr. Harris' outside earnings in the years following his discharge, but he explained that his outside income would have been the same whether he worked for the bank or not. The efforts he had been making began to pay off after his discharge.

We are of the opinion that under this slate of facts, whether Mr. Harris' award for back pay should have been reduced by his outside activities presented a question for the jury. Where the jury resolved that question against the appellants it must be affirmed if there is any material evidence in the record to support it. Rule 13(d), Tenn. R. App. Proc.

The appellants charge that Mr. Harris' failure to mitigate his damages must be judged by the same rule. We find material evidence in the record to support a conclusion that Mr. Harris made reasonable efforts to obtain other employment.

## V. The Jury Charge

The appellants assert that the jury charge on the burden of proof was erroneous and unduly prejudicial. The portion of the charge complained of was as follows:

> To prove that age was a determining factor in Dominion's decision to eliminate Plaintiff's position, you must first establish a prima facie case of discrimination. To establish a prima facie case through circumstantial evidence, Plaintiff first has the burden of proving each of the following elements by a preponderance of the evidence:
>
> 1. He was forty years or older;
>
> 2. His employment was terminated;

3. He was qualified to perform his job; and

4. He was replaced by a person under the age of forty.

Plaintiff may also make out his prima facie case through direct evidence.

. . . .

If you determine that Plaintiff has established a prima facie case that Dominion eliminated his position because of his age or failed to offer him employment because of his age, you must still consider the reasons given by Dominion in support of its employment decisions related to Plaintiff.

The appellants cite *St. Mary's Honor Center v. Hicks*, 509 U.S. _____ (1993) as authority for the rule that once the case has reached the jury it is error to give the quoted instruction. Assuming that the ruling in that case would apply to a state court trying a state cause of action under the Tennessee Human Rights Act, we would still have to determine if the error more probably than not affected the judgment. See Rule 36, Tenn. R. App. Proc.

We are of the opinion that the quoted part of the charge was at most surplusage and did not adversely affect the appellant's rights. We do not see how the jury could have been confused by the charge or how it might have led the jury to return a verdict for the plaintiff where, without the charge, the result would have been different. Therefore, we think the error, if any, was harmless.

**VI.**

The final issue concerns the trial judge's decision to allow the plaintiff to reopen his proof to prove his efforts to mitigate his damages.

When the plaintiff closed its case in chief, the trial judge had a conference in his chambers to determine what issues should be presented to the jury. In the course of that conference the defendants stated their belief that the plaintiff had failed to prove he had made efforts to mitigate his damages. Although the plaintiff argued that the record contained proof of his efforts to mitigate, his counsel made a motion to re-open the proof, which the court granted.

Permitting additional proof after a party has announced that the proof is closed is a matter within the trial judge's discretion and should not be disturbed on appeal unless the action results in injustice to one of the parties. *Higgins v. Steide*, 47 Tenn. App. 42, 335 S.W.2d 533 (1959).

When we consider the record as a whole and note that the plaintiff had proved in his case in chief that he did apply to the mortgage company, we conclude that the trial judge did not abuse his discretion.

We reverse the judgment for Mortgage Group's failure to hire and dismiss that claim. Further, we suggest a remittitur in the case against Dominion Bank to $224,254. Both cases are remanded to the Chancery Court of Montgomery County for further proceedings. Tax the costs one-half to the appellant and one-half to Dominion Bank.

                                        _____

                                        BEN H. CANTRELL, JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION

- 12 -

_____
WILLIAM C. KOCH, JR., JUDGE